**Allen ADAIR, et al., Plaintiffs,**

v.

**TROY STATE UNIVERSITY OF MONTGOMERY, et al., Defendants.**

Civ. A. No. 95–A–263–N.

United States District Court, M.D. Alabama, Northern Division.

July 10, 1995.

---

M. Wayne Sabel, Mark W. Sabel, Jr., Sabel & Sabel, P.C., Montgomery, AL, for plaintiffs.

Samuel Adams, Montgomery, AL, Richard Eldon Davis, Steve A. Tucker, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### INTRODUCTION

This cause is before the court on Defendants' Motion to Dismiss, filed on March 13,

1995. Plaintiffs brought this action on February 24, 1995, pursuant to 42 U.S.C. § 7604, the citizen suit provision of the Clean Air Act ("the Act" or "the CAA"). Plaintiffs sought injunctive relief, civil penalties and attorneys' fees. Plaintiffs alleged that the defendants were in violation of 42 U.S.C. § 7412, the "Hazardous Air Pollutant" section of the Act. Specifically, plaintiffs alleged that the renovation and reconstruction being conducted by the defendants at Whitley Hall in Montgomery, Alabama, emitted asbestos in violation of that section.

A consent order was entered by this court on February 27, 1995, resolving the issue of temporary relief. Following oral argument regarding several outstanding motions on May 5, 1995, plaintiffs conceded that defendants were in substantial compliance with that consent order. Additionally, plaintiffs made no objection to the resumption of the demolition and renovation in Whitley Hall by the defendants, provided defendants used an accredited asbestos abatement company. So far as the court is aware, the renovation project has been resumed in a manner in compliance with the Clean Air Act, although that is not the subject of the current action.

As stated above, in addition to their request for injunctive and declaratory relief, the plaintiffs asked that the court assess civil penalties against the defendants, and that the court award the plaintiffs reasonable attorneys' fees. Therefore, despite the resolution of the issue of injunctive relief, there remains the question of the continued viability of this lawsuit.

Defendants have moved to dismiss the case on two grounds. According to the defendants, the plaintiffs failed to comply with the 60-day notice requirement set forth in the citizen suit provision of the Clean Air Act

and codified at 42 U.S.C. § 7604(b). The failure to comply with the notice requirement, argue the defendants, acts as an absolute bar to this lawsuit. Additionally, defendants contend that this suit concerns purely past violations and therefore it cannot be maintained as a citizen suit as it does not fall within the language that authorizes such suits.[1]

## FACTS

Whitley Hall, located in downtown Montgomery, Alabama, is home to, among others, defendant Troy State University of Montgomery ("TSUM") as well as the plaintiffs. In connection with the relocation of various classes to Whitley Hall by TSUM, the defendants in this action (TSUM and various officers and administrators) undertook a large scale demolition and renovation project of the fifth floor of the building. According to the defendants, the demolition of the fifth floor began on January 3, 1995.

Plaintiffs are individuals who work in Whitley Hall. According to the plaintiffs, the renovation project resulted in several violations of the standards pertaining to asbestos as promulgated under the Clean Air Act. These violations allegedly exposed the plaintiffs to asbestos emissions.[2]

According to the plaintiffs, renovation in the building began well over a year ago, and has been concentrated on the fifth floor of the building. Plaintiffs contend that on January 31, 1995, they noticed that the dust from the fifth floor project was irritating their eyes and causing "respiratory distress." Plaintiff Adair surveyed the fifth floor on February 1, 1995, and noted that there were no dust barriers to prevent dust from reaching other areas of the building. Plaintiffs

---

**1.** At one point the defendants also contended that the consent order is invalid in that it failed to comply with the notice provisions set forth in 42 U.S.C. § 7604(c)(3). That subsection provides that "No consent judgment shall be entered in an action ... in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator ..." The court does not understand the defendant at this time to be objecting to the validity or the terms of the consent order. Additionally, this court does not read the notification provisions

that pertain to the entry of a consent judgment to apply to the entry of a temporary order agreed upon by the parties to address an emergency situation.

**2.** There does not appear to be any dispute that Whitley Hall had asbestos in it, or that asbestos was removed during the renovation of the fifth floor. Rather, the underlying dispute in this case concerns (a) the amount of asbestos, and (b) whether the defendants violated the emissions standards for asbestos.

allege that on several occasions, their work space in the building was covered with visible dust that they claim resulted from the renovation project. Specifically, plaintiffs allege that the work area on the third floor in Whitley Hall was covered with dust on February 21, 1995. On February 23, 1995, plaintiffs were notified that air samples taken from their work area on a different date contained asbestos fibers.

Plaintiffs also allege that the defendants failed to use the proper procedures for asbestos removal. Specifically, plaintiffs allege failure on defendants' part to properly wet the material, failure to bag asbestos for removal, and failure to properly mark material and warn the public and employees of the presence of asbestos. Plaintiffs also contend that the defendants failed to develop and present federal authorities with an asbestos abatement plan, or even notify federal authorities of their intent to remove asbestos.

Plaintiffs allege that they notified the Alabama Department of Environmental Management ("ADEM") of the CAA violations in early February. According to the plaintiffs, an employee of ADEM inspected Whitley Hall on February 8, 1995, and concluded that there was less than the required 260 feet of asbestos wrapped pipe, and that therefore the project did not come under the Clean Air Act. Plaintiffs dispute that there is less than 260 feet of asbestos wrapped pipe. In reaction to ADEM's refusal to pursue the matter, plaintiffs contend that they contacted the EPA, and that they were instructed that a citizen suit in Federal District Court requesting a temporary restraining order was the appropriate course of action.

Plaintiffs allege in their complaint that "similar violations are likely to continue and to recur in the future," and that "[a]t present, there is no legal mechanism in place to prevent asbestos-disturbing work from commencing." According to the defendants, though, all renovation and demolition stopped in Whitley Hall in response to plaintiffs' concerns on February 21, 1995, three days prior to the filing of the complaint. As stated previously, it appears that renovation has resumed with the use and assistance of an accredited asbestos abatement firm. Defendants contend that plaintiff cannot allege in good faith that there have been any CAA violations since February 21.

## STANDARD

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (citation omitted) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

## ANALYSIS

### Failure to Give Notice

■ Almost every major environmental law today has a provision allowing for suits brought by the public to enforce the terms of the statute.[3] The provisions are called citizen suit provisions, and they are designed to have several effects. Most obviously, they are intended to allow for greater citizen participation in the enforcement of environmental laws. *See, Hallstrom v. Tillamook County*, 493 U.S. 20, 28, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989). Additionally, because these provisions generally allow for a lawsuit against the EPA Administrator for failing to fulfil her statutory duty, the provisions are

---

**3.** *See, e.g.,* The Federal Water Pollution Control Act (the Clean Water Act), 33 U.S.C. § 1365; The Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 7002; and The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9659. In fact, the only major environmental statute without a citizen suit provision is the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.*

intended to encourage proper government personnel to fully execute their functions. *Id.* at 29, 110 S.Ct. at 310.

The Clean Air Act was the first piece of environmental legislation to contain a citizen suit provision, and was the basis for all notice provisions that were included in subsequent environmental statutes.[4]  *Id.* at 28, 110 S.Ct. at 309.  The citizen suit provision in the CAA states that:

### (a) Authority to bring civil suit, jurisdiction

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person ... who is alleged to have violated ... or to be in violation of ... an emission standard or limitation under this chapter ...

42 U.S.C. § 7604(a).

Although Congress clearly wanted to encourage citizen participation, there was an important and contrary concern that was also addressed in the legislation.  *Id.* at 29, 110 S.Ct. at 310.  In order to prevent a tidal wave of citizen suits burdening government agencies as well as the federal courts, Congress included a requirement that citizens notify the alleged polluter, the state in which the alleged violation occurred, and the Administrator 60 days prior to bringing suit. 42 U.S.C. § 7604(b).  This requirement has several effects.  First, it allows the appropriate agency to undertake enforcement action in the interim.  *Hallstrom,* 493 U.S. at 29, 110 S.Ct. at 310.  Additionally, the notice requirement provides a delay period in which the alleged violator can take steps in order to bring itself into compliance.  *Id.; see also, Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 60, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987).

Subsection (b) sets forth the notice requirement for citizen suits brought under the Clean Air Act.  According to that subsection:

### (b) Notice

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) Prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard . . .

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 7412(i)(3)(A) or (f)(4) of this title or an order issued by the Administrator pursuant to section 7413(a) of this title.  Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

42 U.S.C. § 7604(b).

■  In 1989, the Supreme Court resolved a split in the circuits regarding the interpretation of the notice requirement found in environmental statutes.  *Hallstrom,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237.  Interpreting the notice provision in the RCRA (42 U.S.C. § 7002), the Court held that notice is a prerequisite to a citizen suit, although the court specifically stopped short of holding that giving notice is actually jurisdictional. *Id.* at 31, 110 S.Ct. at 311.  Thus, based on *Hallstrom,* a citizen suit ordinarily may not be maintained unless the plaintiff provides the alleged violator, the State in which the violation occurred, and the Federal Government (the EPA Administrator) with notice of an intent to sue at least 60–days prior to filing the complaint.

As shown by the language of 42 U.S.C. § 7604(b) set out above, though, there are two exceptions to the 60–day notice requirement of the Clean Air Act.  These are for suits brought for violations of section 7412(f)(4) and section 7412(i)(3)(A).  The plaintiffs alleged in their complaint that they complied with the notification requirement of the statute by filing suit immediately after giving notice by certified mail.  They argue

---

**4.**  For this reason courts will often rely on case law interpreting the citizen suit provision of one particular statute in their interpretation of a different statute.  The citizen suit provisions are essentially interchangeable.  *See, Hallstrom v.*

*Tillamook County,* 831 F.2d 889, 890 (9th Cir. 1987) ("Courts have construed [the notice provisions in different environmental statutes] identi-

that their suit was one that fell within the stated exceptions.[5] These sections are discussed below.[6]

### § 7412(f)(4)

■ According to the plaintiffs, they may bring suit without regard to the 60–day notice provision of the Clean Air Act because this action is one brought pursuant to 42 U.S.C. 7412(f)(4). This subsection was added by Congress to the CAA through the 1990 Amendments to the Clean Air Act. Pub.Law 101–549, 104 Stat. 2399. Subsection (f)(4) is entitled "Standard to protect health and the environment" and it reads:

No air pollutant to which a standard under this subsection applies may be emitted from any stationary source in violation of such standard, except that in the case of an existing source—

(A) such standard shall not apply until 90 days after its effective date, and

(B) the Administrator may grant a waiver permitting such source a period of up to 2 years after the effective date of a standard to comply with the standard if the Administrator finds that such period is necessary for the installation of controls and that steps will be taken during the period of the waiver to assure that the health of persons will be protected from imminent endangerment.

42 U.S.C. § 7412(f)(4). For the purposes of this lawsuit, the relevant portion of this subsection of the statute is the first phrase, through "except." The question to be resolved in determining whether this suit may be brought without 60–days notice as one instituted under 7412(f)(4) is whether the defendants are alleged to have violated "a standard under this subsection"—i.e. a standard under 7412(f). The language of subsection (f) and the legislative history lead this court to conclude that the standards referred to in subsection (f) are not yet in place, and therefore this suit does not fall within the § 7412(f)(4) exception.

As defendants correctly note, subsection (f) concerns so called "residual risk" standards, to be put in force several years after the original standards promulgated under subsection 7412(d) of the Act. Subsection (d) is the subsection that directs the Administrator to establish emissions standards for the listed hazardous air pollutants. 42 U.S.C. § 7412(d). Under § 7412(f), the EPA Administrator is directed to report to Congress within six years of November 15, 1990, the "remaining risk" to the public concerning hazardous air pollutants "from sources subject to regulation under this section [§ 7412] after the application of standards under subsection (d) of this section." 42 U.S.C. § 7412(f)(1).

If Congress does not act on the report and recommendation of the Administrator as given pursuant to § 7412(f)(1), the Administrator is directed to issue supplemental standards on her own within 8 years after the promulgation of standards under § 7412(d). The Senate Report accompanying the Clean Air Act Amendments of 1990 begins its explanation of subsection 7412(f) by stating that "Hazardous air pollutants may continue to impose significant adverse effects on public

cally ..."), *aff'd* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

**5.** Under these exceptions, a plaintiff may bring suit "immediately after" notifying the appropriate parties of plaintiff's intent to sue. In the instant case, plaintiffs alleged in their complaint that they provided appropriate notice immediately before bringing suit. This point is not contested by the defendants. Rather, defendants argue that this suit does not fall within the exceptions cited by plaintiff, and that notice was required 60 days prior to suit.

**6.** Defendants have cited a case in which a citizen suit was dismissed by a Federal District Court for failure to comply with the 60–day notice provision of the Clean Air Act. *Moran v. Vaccaro*, 684 F.Supp. 1201 (S.D.N.Y.1988). That case also involved asbestos abatement and defendants have urged the court to rely on its reasoning in dismissing the instant suit. For several reasons, the court will not do so. First, there is no discussion in the *Moran* decision of the exceptions to the 60–day notice provisions that existed prior to the 1990 Amendments to the CAA. These exceptions included what was then § 7412(c)(1)(B), which appears to be the predecessor to § 7412(i)(3)(A). Thus, this court cannot determine the reasoning used by the *Moran* court to determine that the exception to the notice requirement did not apply. Additionally, it need hardly be noted that the decision in *Moran* is not binding on this court. Absent a more detailed explanation of the *Moran* court's reasoning, this court cannot rely on the holding from another District Court in a case heard seven years ago.

health and the environment, *even after the technology based standards for major and area sources authorized by section 112(d) [§ 7412(d) ] are fully implemented.* Senate Legislative Report 101–228, reprinted at 1990 U.S.C.C.A.N. 3385, 3562 (emphasis added). Thus it is clear that the standards referred to in § 7412(f)(4) are the residual risk standards that are to be promulgated either by Congress in response to the recommendations issued by the Administrator or by the Administrator herself.

In either case, these residual risk standards do not appear to exist at this time. As stated above, § 7412(f) directs the Administrator to report to Congress regarding the residual risk of air pollutants within six years. If Congress fails to act on the recommendations, the Administrator shall promulgate further standards within eight years. Although the use of the word "within" makes it possible that Congress and/or the Administrator could have taken action prior to the expiration of the allotted time, plaintiffs have not pointed the court to any new standards promulgated pursuant to § 7412(f). Again, the standards *"under this subsection"* are not the initial standards promulgated under § 7412(d), nor are they the standards that existed prior to the 1990 Amendments to the Clean Air Act.[7] They are supplemental standards meant to address the residual risks that exist *after* the implementation of the first set of standards authorized under the Act. Thus, the plaintiffs' suit is not one brought pursuant to § 7412(f)(4) for violations of standards under subsection (f).

### § 7412(i)(3)(A)

■ Plaintiffs also argue that their lawsuit falls outside the 60–day prior notice requirement as a suit brought under § 7412(i)(3)(A). Subsection 7412(i) is entitled "Schedule for compliance," and it sets forth the time peri-

ods for various sources to bring themselves into compliance with the standards promulgated under the Clean Air Act. Subparagraph 7412(i)(3)(A) reads:

(A) After the effective date of any emissions standard, limitation or regulation promulgated under this section and applicable to a source, no person may operate such source in violation of such standard, limitation or regulation except, in the case of an existing source, the Administrator shall establish a compliance date or dates for each category or subcategory of existing sources, which shall provide for compliance as expeditiously as practicable, but in no even later than 3 years after the effective date of such standard, except as provided in subparagraph (B) and paragraphs (4) through (8).

42 U.S.C. § 7412(i)(3)(A).

According to the defendants, this subparagraph creates an exception to the notice provisions that is applicable only when a citizen brings suit against the Administrator to establish a compliance date for existing sources. The defendants argue that the first phrase of the subparagraph merely states that no one may violate the standards set forth under the Act. Because this command is redundant, defendants argue that it could not be the relevant part of this subparagraph and should be ignored.

■ The court must disagree with the defendants' arguments. A cardinal principle of statutory construction is that the language used by the legislature is intended to have an effect. *See, e.g., Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used."); *U.S. v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) ("It is our duty 'to

---

7. Like subsection (f)(4), subsection (d), which mandates the promulgation of standards for emissions of pollutants listed in § 7412, was added to the Clean Air Act under the 1990 Amendments. Prior to 1990, several pollutants, including asbestos, were regulated under § 7412. These regulations are called the National Emissions Standards for Hazardous Air Pollutants (NESHAPs) and are set forth at 40 C.F.R. part 61. The 1990 Amendments to the Clean Air Act specifically stated that regulations in effect prior to the regulations that would be promulgated under § 7412(d) were to continue in force and effect. Pub.Law 101–549 § 301(q), 104 Stat. 2562–63. As noted in the Senate report, "[T]he existing national emissions standards for hazardous air pollutants (NESHAPs) are to continue in effect ..." Senate Legislative Report 101–228, reprinted at 1990 U.S.C.C.A.N. 3385, 3585. Thus, the passing of the 1990 Amendments did not eliminate prior emissions standards for asbestos.

give effect, if possible, to every clause and word of a statute.'") (citations omitted). Thus, the court cannot presume that any particular phrase was intended to be disregarded in the interpretation of the statute. The court may do so only where to apply the language as set forth in the law would lead to an absurd or contradictory result as that intended by the legislation. *See U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Such is not the case in this instance. In fact, as discussed below, the language is entirely logical given its context.

The defendants argue that construction of § 7412(i)(3)(A) in the manner suggested by the plaintiffs essentially eliminates the notice requirements for alleged violations of standards promulgated under § 7412, the Hazardous Air Pollutant section of the Clean Air Act. According to the defendants, had Congress intended this result, it simply would have created a broad exception, rather than creating two separate exceptions under two different subsections of § 7412. Defendants' argument on this point is logical. However, the plain language of the statute, always the starting point in a case such as this, indicates that there is an exception to the notice provision where a person operates an emissions source in violation of a standard under § 7412 after the effective date of such standard. While it is true that Congress could have explicitly created a blanket exception for all actions under § 7412, they similarly could have worded § (i)(3)(A) in a manner that made it clear that this section only applied to actions against the Administrator. By leaving out the first phrase of subparagraph (i)(3)(A), Congress would have enacted the provision that defendants urge the court to create. Congress chose to use the language that it did, and the court must presume that it did so for a reason. Therefore, if at all possible, the court cannot disregard the section's plain language.

Additionally, there is persuasive authority that the Clean Air Act has long provided that

citizen suits may be brought immediately following notice where the suit concerns a violation of the stationary source emissions standards as governed under § 7412 and the NESHAPs. 40 C.F.R. part 61. For example, in *Hallstrom,* the plaintiffs argued that strict enforcement of the notice provisions would preclude courts from "giving essential temporary relief ..." *Hallstrom,* 493 U.S. at 30, 110 S.Ct. at 311. In response, the Court stated "Congress has addressed the dangers of delay in certain circumstances and made exceptions to the required notice periods accordingly." *Id.* The Court then specifically noted that "citizen suits may be brought immediately in cases involving stationary-source emissions standards and other specified compliance orders." *Id.* This has led commentators to conclude that "[t]he notice requirement [under the pre–1990 CAA] did not apply to suits alleging violations of NESHAPS or EPA administrative orders issued under section 113(a)." David Buente, *Citizen Suits and the Clean Air Act Amendments of 1990: Closing the Enforcement Loop,* 21 Envtl. L. 2233, n. 41 and accompanying text. There is no indication in the history of the 1990 Amendments to the CAA that Congress intended to alter this result and make it more difficult to bring suit for violations of the emissions standards for hazardous air pollutants. In this case, defendants are alleged to have violated the emissions standards for asbestos, which was one of only a few substances regulated under the pre–1990 NESHAPs. Asbestos remains regulated under those standards, and it is included on the updated list of 189 hazardous pollutants in the amended Clean Air Act. 42 U.S.C. § 7412(b).

■ As stated above, subsection 7412(i) sets forth the schedule for compliance with standards promulgated under § 7412. Thus, according to subparagraph (i)(3)(A), all sources must comply with § 7412 standards *immediately,*[8] except in certain listed situations. The use of "source" in the first phrase, and "existing source" in the second

---

8. Although the 1990 Amendments direct the Administrator to promulgate new standards under § 7412(d), the Amendments also contained a "Savings Clause," which provided that all standards in effect at the time the Amendments were enacted (the NESHAPS) were to continue in

force until they were updated. *See* Senate Report No. 101–228, reprinted at 1990 U.S.S.C.A.N. 3385, 3585. Thus, the asbestos standards promulgated prior to 1990 are in effect and are standards "under this section."

phrase makes it clear that all sources, new or existing, may not be operated[9] in violation of the standards as soon as those standards are promulgated, unless the source falls under one of the exceptions listed as applying to an existing source.[10] The need for the exception is obvious. A source that is already in operation when a new standard comes into effect will naturally need some time to make the alterations necessary to meet the new standards. This section gives those existing sources time—but no more than three years. As noted by plaintiffs, the standards for asbestos have been in place for far more than three years. *See* 40 C.F.R. § 61.140 *et seq.*, 36 FR 5931; Mar. 31, 1971.

Just as the need for an exception to the immediate compliance rule for existing source is logical, so too is it logical that Congress would create an exception to the 60–day notice provision for the discharge of what it has characterized as "Hazardous air pollutants." Congress may have determined that in situations involving the discharge of these dangerous emissions, there was a need for immediate action. The Supreme Court's *dicta* in *Hallstrom,* cited above, supports this interpretation. *Hallstrom,* 493 U.S. at 30, 110 S.Ct. at 310.

■ The defendants are clearly alleged to have been in violation of a standard promulgated under § 7412. The use of "this section" in § 7412(i)(3)(A) rather than the more restrictive "this subsection" means that this subparagraph applies to the standards promulgated prior to the 1990 Amendments to the Clean Air Act, and thus to the asbestos standards set forth in 40 C.F.R. § 61.140 *et seq.* As stated above, the court recognizes that this creates a broad exception to the notice requirements, however, the plain language of the statute precludes a different interpretation. Therefore, the court finds that this suit is one brought pursuant to § 7412(i)(3)(A) and as such may be brought without giving defendants and the government 60–days notice prior to filing a complaint.

## Past Violations

■ Defendants also contend that this suit cannot be maintained by the plaintiffs because the suit concerns "purely past violations." In support of this contention, the defendants cite the court to *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

However, as noted by plaintiffs, that decision is not applicable to cases brought under the Clean Air Act. *See* 42 U.S.C. 7604(a); *see also,* Roger Greenbaum and Anne Peterson, *The Clean Air Act Amendments of 1990: Citizen Suits and How They Work,* 2 Fordham Envtl.L.Rep. 79, n. 147–158 and accompanying text. The 1990 Amendments to the Clean Air Act partially addressed the Court's holding in the *Gwaltney* decision, altering the language used in the citizen suit provision. That section of the CAA now states that a plaintiff may bring a suit against a party "who is alleged to have violated (if there is evidence that the alleged violation has been repeated) *or* to be in violation of (A) an emission standard or limitation under this chapter ..." 42 U.S.C. § 7604(a)(1) (emphasis added). Thus Congress explicitly authorized a citizen suit either where defendants *are* in violation of a standard, or where defendants *have* violated a standard. This clearly includes past violations, so long as there is evidence that the violations were repeated.

Plaintiffs have alleged that the defendants repeatedly violated the standards under the CAA. Accordingly, the suit cannot be dismissed under the authority of *Gwaltney.*

### CONCLUSION

For the reasons set forth above, the court finds that the Defendants' Motion to Dismiss is due to be, and is hereby, DENIED.

---

**9.** The court notes that an individual or organization that has control over an asbestos removal project qualifies as an operator as that term is used in the statute. *See, U.S. v. Walsh,* 8 F.3d 659, 662 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994).

**10.** There is no argument that this source falls under any of the listed exceptions.