UNITED STATES of America, Plaintiff,

v.

LTV STEEL COMPANY, INC., Defendant.

Civ.A. No. 98–570.

United States District Court, E.D. Pennsylvania, Pittsburgh Division.

Dec. 31, 1998.

Lisa A. Cherup, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, Amy Reynolds Hay, Asst. U.S. Atty., Pittsburgh, PA, for Plaintiff.

Paul Michael Pohl, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Defendant.

## MEMORANDUM ORDER

CINDRICH, District Judge.

The United States of America filed the instant civil action for penalties for defendant LTV Steel Company, Inc.'s ("LTV") alleged violations of Article XX, Sections 520.F and 520.G of the Allegheny County Health Department (the "ACHD") Rules and Regulations governing air emissions from coke oven batteries within Allegheny County. The following motions are currently pending: Motion to Intervene by the Group Against Smog and Pollution (Doc. No. 2); Amended Motion to Intervene by the Group Against Smog and Pollution (Doc. No. 8); Allegheny County Health Department's Motion To Intervene (Doc. No. 7); LTV's Motion to Dismiss for Failure to State a Claim (Doc. No. 11); and LTV's Motion for a Case Management Conference (Doc. No. 32).

### I. *Background*

LTV owns, and until February 28, 1998, operated, a coke production plant located in the Hazelwood Section of Pittsburgh, Pennsylvania (the "Pittsburgh Coke Works"). Air emissions from the Pittsburgh Coke Works were subject to Section 520 of the ACHD Rules and Regulations governing coke oven batteries. The ACHD has been responsible at the local level for monitoring LTV's compliance with Section 520 at the Pittsburgh Coke Works, in coordination with the United States Environmental Protection Agency ("U.S. EPA"). Section 520 of the ACHD Rules and Regulations is part of Pennsylvania's State Implementation Plan (the "Pennsylvania SIP") which is a program designed to implement the Federal Clean Air Act (the "CAA"). *See* 40 C.F.R. § 52.2020. Thus, Section 520 is federally enforceable under the CAA. 42 U.S.C. §§ 7413(a)(1) and (b)(1).

In October 1996, U.S. EPA and ACHD conducted an inspection of the Pittsburgh Coke Works which led to the issuance of a Notice of Violation to LTV in March 1997. Violations of the air emission standards for coke battery combustion stacks, and for coke oven pushing operations were detected during the inspection, and were identified in the Notice of Violation.

In July 1997, following the issuance of the Notice of Violation, U.S. EPA met with LTV to discuss the combustion stack and pushing emission violations. Shortly thereafter, U.S. EPA referred an enforcement action against LTV to the United States Department of

Justice (the "DOJ"). On October 30, 1997, the DOJ notified LTV of the referral for enforcement action, and invited the Company to meet and discuss settlement prior to the commencement of litigation. Eventually, representatives of the United States, Allegheny County and LTV held numerous face-to-face meetings, and telephone calls to discuss the impending litigation, and the fate of the Pittsburgh Coke Works.

LTV permanently shut down all coke oven batteries at the Pittsburgh Coke works on February 28, 1998. The United States commenced the instant suit under the CAA on March 25, 1998, to recover a civil penalty for the alleged air emission violations that occurred at the Pittsburgh Coke Works over the past few years.

II. *Analysis*

A. *Motion to Intervene by the Group Against Smog and Pollution (Doc. No. 2) and Amended Motion to Intervene by the Group Against Smog and Pollution (Doc. No. 8)*

The Group Against Smog and Pollution ("GASP") is a local citizens group dedicated to the improvement of air quality for all persons living in the City of Pittsburgh and surrounding communities. GASP filed a motion to intervene in the instant action pursuant to Federal Rules of Civil Procedure 24(a)(1), (a)(2), and (b)(2). GASP summarized the extent of involvement it seeks as follows:

> GASP desires to be involved in any attempts by the parties to determine the terms and conditions of a possible settlement or order, to participate in any discovery that may be commenced by either party and to initiate its own discovery where appropriate, and to participate—through offering testimony and other evidence and examining and cross-examining witnesses and offering oral and written arguments to the Court—as part of any hearing or trial leading to the imposition of a civil penalty on the Defendant for its violation of the Pennsylvania SIP and the formulation of any Supplemental Environment Project (or "beneficial mitigation project") that may be funded from any civil

penalties imposed. In addition, GASP seeks to be in the position whereby, if this case is not resolved in a manner which GASP considers to be in accord with the interests of its members and other sectors of the local community impacted by the Coke Works, it can pursue necessary appeals.

GASP's Brief in Support of Motion to Intervene ("GASP's Br.") (Doc. No. 9) pp. 7–8.

1) *Intervention of Right Pursuant to Fed. R.Civ.P. 24(a)(1)*

GASP contends that it qualifies as an intervenor of right pursuant to Fed.R.Civ.P. 24(a)(1) in that 42 U.S.C. Section 7604(b)(1)(B) confers upon citizens an unconditional right to intervene in suits such as the instant one.

Federal Rule of Civil Procedure 24(a)(1) provides in pertinent part:

> (a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action:

> (1) when a statute of the United States confers an unconditional right to intervene; . . . .

The CAA provides for citizen suits at 42 U.S.C. § 7604 which reads in pertinent part:

> (a) **Authority to bring civil action; jurisdiction**

> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

> (b) **Notice**

> No action may be commenced—

> (1) under subsection (a)(1) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

The United States does not oppose GASP's motion to intervene. LTV, however, argues against GASP's intervention. First, LTV contends that GASP's motion must be denied because it lacks standing under Article III of the United States Constitution.

Article III, Section 2 of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies."

\*\*\*

The irreducible constitutional minimum of standing contains three requirements. First and foremost, there must be alleged (and ultimately proven) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Steel Company v. Citizens For A Better Environment,* 523 U.S. 83, ——, 118 S.Ct. 1003, 1016–17, 140 L.Ed.2d 210 (1998) (citations and quotations omitted).

■ LTV contends that GASP has not established the first two standing requirements, injury and causation. LTV's argument

overlooks, however, the proposition that each element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. Thus, while a plaintiff must set forth by affidavit or other evidence specific facts, to survive a motion for summary judgment, Fed.Rule Civ. Proc. 56(e), and must ultimately support any contested facts with evidence adduced at trial, at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.

*Bennett v. Spear,* 520 U.S. 154, 167–68, 117 S.Ct. 1154, 1163–64, 137 L.Ed.2d 281 (1997). Just so here.

■ GASP alleges in its proposed complaint that

over the course of almost two years commencing in 1996, violations of the Pennsylvania SIP ... at LTV's Coke Works imposed significant injuries, discomfort, and inconvenience on members of GASP and other persons living or working in the Hazelwood neighborhood of the City of Pittsburgh where the facility was located, in the Squirrel Hill neighborhood of the City of Pittsburgh and in various other parts of the City and surrounding communities. Despite the closing of said facility, those members of GASP and the public at large continue to suffer from said injuries and must expend substantial sums to clean their houses and other property fouled by the emissions from the Coke Works.

Complaint of Plaintiff–Intervenor GASP (appearing in case file and marked as received on March 30, 1998) para. 7. Although GASP will ultimately be required to furnish evidence of injury and causation, the allegations of its complaint are sufficient at this stage of the litigation.

■ LTV also argues that GASP cannot establish the third standing element, redressability. Specifically, LTV contends that none

of the relief sought by GASP is available to its members under the CAA. We disagree.

The CAA provides at 42 U.S.C. § 7604(g) that:

> (1) Penalties received under subsection (a) of this section shall be deposited in a special fund in the United States Treasury for licensing and other services....
>
> (2) Notwithstanding paragraph (1) the court in any action under this subsection to apply civil penalties shall have discretion to order such civil penalties, in lieu of being deposited in the fund referred to in paragraph (1), be used in beneficial mitigation projects which are consistent with this chapter and enhance the public health or the environment. The court shall obtain the view of the Administrator in exercising such discretion and selecting any such projects. The amount of any such payment in any such action shall not exceed $100,000.

The citizens suit provision of the CAA, therefore, provides for the establishment of a beneficial mitigation fund which could be structured to provide some measure of redress to GASP members living or working in or near Hazelwood for LTV's alleged violations.[1] We find that this provision affords GASP the potential for redress for purposes of Article III standing.[2]

■ Next, LTV argues that even if it has standing under Article III, GASP does not have a statutory right to intervene pursuant to Section 7604. LTV contends that Section 7604 does not allow a citizen to intervene in cases such as the instant one where the United States is only seeking civil penalties and not injunctive relief. We disagree.

As noted in *Fried v. Sungard Recovery Services, Inc.:*

> [i]n 1990, the CAA was amended to permit citizen suits against any person "alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation" of [a SIP].[3] 42 U.S.C. § 7604(a). Until the 1990 Amendments, citizen suits were only permitted when the alleged violations continued till the date the action was filed. This doctrine, barring wholly past violations, was based on the Supreme Court's holding in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation,* 484 U.S. 49, 57, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987), interpreting the Clean Water Act's then-similar citizen suit provision.
>
> A plain reading of the CAA as amended, however, indicates that the 1990 Amendments overruled *Gwaltney* with respect to wholly past violations. The CAA, therefore, permits citizen suits for both continuing violations and wholly past violations, so long as the past violation occurred more than once.[4] This interpretation has been accepted by several courts and is pressed upon us by Plaintiffs.

916 F.Supp. 465, 467–68 (E.D.Pa.1996) (collecting cases). Thus, we find that Section 7604 provides GASP with a statutory right to intervene in the instant action which involves only past violations of the CAA.

Accordingly, GASP's motion to intervene at Doc. No. 8 is **GRANTED.**[5] Also, we note

---

1. LTV contends that Section 7604(g) cannot provide GASP with redress because such section vests the Administrator of the EPA, and not this court, with the discretion of determining what, if any, mitigation projects might be appropriate. We disagree. The plain language of the statute states that the court has the discretion "to order that ... civil penalties ... be used in beneficial mitigation projects." 42 U.S.C. § 7604(g)(2). The statute only requires the court to obtain the "view of the Administrator in exercising such discretion and selecting such projects." *Id.* (emphasis added).

2. We note that LTV relies heavily on the *Steel Company* case arguing that civil penalties payable to the United States Treasury do not provide citizens with sufficient redress under Article III.

The *Steel Company* case, which involved the Emergency Planning and Community Right–To–Know Act of 1986 (the "EPCRA") is distinguishable from the instant action which involves the CAA. 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210. Unlike the CAA, the EPCRA does not contain a mitigation fund provision.

3. The original language only permitted suits against those "alleged to be in violation."

4. The violations at issue in the instant case were allegedly repeated.

5. Because we conclude that GASP is entitled to intervention as of right under Rule 24(a)(1), we need not reach the question of whether it is entitled to intervene pursuant to either Rule 24(a)(2) or 24(b)(2).

that GASP filed an earlier motion to intervene at Doc. No. 2 which was superseded by the motion at Doc. No. 8. GASP's earlier motion to intervene at Doc. No. 2, therefore, is **DENIED as MOOT.**

### B. *Allegheny County Health Department's Motion To Intervene (Doc. No. 7)*

■ The ACHD filed a motion to intervene pursuant to Fed.R.Civ.P. 24(a) or, in the alternative, Rule 24(b). LTV argues in response that the ACHD is not eligible to intervene as a matter of right pursuant to Rule 24(a)(1).[6] LTV contends that it does not object to the ACHD's permissive intervention under Rule 24(b), provided that certain limitations are placed on such intervention.

First, LTV argues that the ACHD does not have a statutory right to intervene pursuant to the CAA's citizens suit provision at Section 7604.[7] LTV contends that Section 7604 does not allow for intervention in cases such as the instant one where the United States is only seeking civil penalties and not injunctive relief. As previously noted, Section 7604 permits intervention for wholly past violations. Thus, we reject this argument.

In addition, LTV apparently does not take issue with the ACHD's intervention pursuant to Rule 24(a)(2). LTV correctly notes that such intervention requires that (1) the application for intervention be timely; (2) the applicant have a sufficient interest in the litigation; (3) the applicant's interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest not be adequately represented by an existing party in the litigation. *See Kleissler v. United States Forest Service,* 157 F.3d 964 (3d Cir.1998). LTV states that it takes no position as to the first three elements. With regard to the fourth element, LTV recognizes that the United States cannot adequately represent the ACHD's interests.

In sum, the ACHD has sufficiently alleged all the requirements for intervention as a matter of right. Accordingly, the ACHD's motion to intervene pursuant to Rule 24(a) (Doc. No. 7) is **GRANTED.** The ACHD's intervention is granted without limitation. The limitations requested by LTV are based on legal arguments that are more appropriately addressed in subsequent motions such as a motion to dismiss or motion for summary judgment.

### C. *LTV's Motion to Dismiss for Failure to State a Claim (Doc. No. 11)*

Also pending is LTV's motion to dismiss. After the filing of LTV's motion, the United States filed a notice of its intention to file an amended complaint. Accordingly, LTV's motion (Doc. No. 11) is **DENIED** without prejudice. The United States shall file its proposed amended complaint within 20 days of the date of this memorandum order. LTV may renew its motion after the United States files its amended complaint.

### D. *LTV's Motion for a Case Management Conference (Doc. No. 32)*

LTV filed a motion for a case management conference. This motion (Doc. No. 32) is **GRANTED.** A case management conference is scheduled for **January 15, 1999** at 3:30 p.m., Courtroom 11, Tenth Floor, U.S. Post Office & Courthouse, Seventh Avenue and Grant Street, Pittsburgh, Pennsylvania.

---

**6.** The United States filed no response to the ACHD's motion.

**7.** The CAA defines "person" as "an individual, corporation, partnership, association, State, mu-

nicipality, political subdivision of a State,...." 42 U.S.C. § 7602(e). Thus, the ACHD qualifies as a "person" for purposes of Section 7604.