Christopher WILLIAMS, Plaintiff,

v.

**LEYBOLD TECHNOLOGIES, INC., et al., Defendants.**

No. C 91–20315 SW.

United States District Court, N.D. California.

Feb. 12, 1992.

Jeffrey S. Lawson, Laurie Berger, Reed, Elliott, Creech & Roth, San Jose, Cal., for plaintiff.

Ralph Swanson, Berliner, Cohen & Biagini, San Jose, Cal., for defendant Leybold Technologies, Inc.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S COUNTER MOTION FOR SUMMARY JUDGMENT

EDWARD A. INFANTE, United States Magistrate Judge.

## I. Introduction

This is a citizen's enforcement action arising under the Emergency Planning and Community Right–To–Know Act ("EPCRA"), 42 U.S.C. Sec. 11001 *et seq.* The Complaint alleges that the defendant, Leybold Technologies Inc. ("Leybold"), failed to timely submit certain hazardous chemical information, in the form of a Material Safety Data Sheet ("MSDS"), to proper local authorities as required by one of the EPCRA reporting provisions, 42 U.S.C. Sec. 11021(a)(1), and the United States Environmental Protection Agency ("EPA") regulations promulgated thereunder. Plaintiff Christopher Williams ("Williams") admits that by the time this suit was filed, because EPA has modified the applicable regulations, Leybold was no longer, nor is it presently, in violation of Sec. 11021(a)(1). However, plaintiff contends that EPCRA authorizes citizen suits seeking civil penalties for wholly past violations.

Plaintiff seeks 1) civil penalties for violation of Sec. 11021(a)(1), pursuant to 42 U.S.C.‑Sec. 11045, and 2) attorney's fees and costs. The parties have cross-moved for summary judgment.

The material facts are not in dispute. From October 1984 through August 1990 Leybold employed Williams as a process technician at its facility located at 1876 Hartog Drive in San Jose. From 1986 to 1990 Leybold used nickel and nickel compounds in its manufacturing operations at the Hartog Drive facility. Pursuant to EPCRA, Leybold was required to submit a MSDS for nickel and nickel compounds to local agencies by August 25, 1988. Leybold has never submitted a MSDS for nick-

el or nickel compounds as required by EP-CRA.

In July 1990, the United States EPA ("EPA") modified the EPCRA regulations, eliminating reporting requirements for hazardous substances present in amounts of less than 10,000 pounds. 40 C.F.R. Sec. 370.20. The amount of nickel and nickel compounds present at the Leybold facility never exceeded 40 pounds. The Complaint in this action was filed on May 30, 1991.

Williams has satisfied the essential elements necessary to prevail in a citizen suit under EPCRA. *See,* 42 U.S.C. Sec. 11046. Leybold is an operator of a facility within the meaning of EPCRA. 42 U.S.C. Sec. 11049(4). Nickel and nickel compounds are listed as hazardous substances under 29 C.F.R. Sec. 1910(Z). Leybold's failure to file a MSDS for nickel and nickel compounds violated EPCRA. *See,* 42 U.S.C. Sec. 11021(a)(1). On September 10, 1990, Williams gave notice of this EPCRA violation to the Administrator of the EPA as required by 42 U.S.C. Sec. 11046(d), and the EPA is not prosecuting an action under this section. 42 U.S.C. Sec. 11046(e).

## II. Summary Judgment Standard

Rule 56(c) F.R.Civ.P. provides that upon motion, summary judgment shall be rendered:

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to material fact and that the moving party is entitled to a judgment as a matter of law."

Summary judgment is appropriate where there is no genuine issue of material fact and the only dispute is as to pure legal questions. *Smith v. Califano,* 597 F.2d 152 (9th Cir.1979). Neither party contends that there is a genuine factual issue for trial as to defendant's past violation of Section 11021(a)(1). Rather, these motions present the following pure questions of law: 1) does EPCRA authorize citizen suits

for past violations of Sec. 11021(a)?, and 2) is the penalty provided for by Section 11045 criminal in nature, and therefore unavailable where the law has changed making Leybold's past conduct non-actionable?

## III. Discussion

### A. Emergency Planning and Right to Know Act[1] ("EPCRA") Structure—Past Violations

EPCRA provides, in pertinent part, that:

The owner or operator of any facility which is required to prepare or have available a MSDS for a hazardous chemical under the Occupational Safety and Health Act of 1970 and the regulations promulgated under that act (29 U.S.C. Sec. 651 *et seq.*) shall submit a MSDS for each such chemical or a list of such chemicals as described in paragraph (2) to each of the following:

(A) the appropriate local emergency planning committee;

(B) the State emergency response commission;

(C) the fire department with jurisdiction over the facility.

42 U.S.C. Sec. 11021(a)(1).

The first EPA regulations promulgated under EPCRA required MSDSs to be submitted to the above listed agencies by all facilities where any hazardous chemicals were present between 10,000 and *zero* pounds. Under those regulations Leybold was required to submit an MSDS to the appropriate agencies by August 25, 1988. Leybold did not submit a MSDS for nickel, a hazardous chemical pursuant to OSHA regulations. 29 C.F.R. Sec. 1910(Z).

In July 1990, the EPA promulgated new EPCRA regulations, which reduced the threshold level of hazardous chemical which triggers the reporting requirements under Section 11021(a)(1). The new regulations only require reporting for hazardous chemicals present at the facility at any one time in amounts equal to or greater than

---

**1.** EPCRA is Title III of the Superfund Amendments and Reauthorization Act ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613.

10,000 pounds. Neither nickel nor nickel compounds, which are classified as hazardous chemicals, were ever present at the Leybold facility in amounts greater than 30–40 pounds.

It is undisputed that Leybold is no longer in violation of EPCRA, nor was it at the time Williams filed the Complaint in this action. Williams relies on *Atlantic States Legal Foundation, Inc. v. Whiting Roll-up Door Manufacturing Corp.*, 772 F.Supp. 745 (W.D.N.Y.1991), to support his contention that EPCRA authorizes citizen suits for reporting violations which are not continuing at the time the suit was filed.

The *Atlantic States* court framed the issue before it as: does EPCRA authorize citizen suits for reporting violations which are not continuing at the time the lawsuit was filed? *Id.* at 749. The court examined the language of the statute and held:

> The plain language of EPCRA's reporting, enforcement and civil penalty provisions, when logically viewed together, compel a conclusion that EPCRA confers federal jurisdiction over citizen lawsuits for past violations.

*Atlantic States* involved a defendant who filed a MSDS only after it received notice that a suit was about to be filed against it. At the time the suit was filed the defendant was still required to submit an MSDS. Although *Atlantic States* did not involve a subsequent change in the federal regulations requiring reporting, nevertheless, its reasoning is sound and fully applicable here. In the absence of a "clearly expressed intention to the contrary" the court must rely on the plain language of the statute. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). EPCRA required Leybold to submit an MSDS by August 25, 1988. EPCRA authorizes citizen suits against any person (other than a government entity) who violates the reporting requirement of Section 11021(a)(1). The statute does not expressly require a continuing violation at the time of filing suit, but rather authorizes a suit against any person who failed to submit an MSDS by the applicable deadline.[2]

EPCRA's legislative history establishes that the dual purposes of EPCRA are to (1) provide the public with information regarding the presence of hazardous chemicals in their communities, and (2) to establish emergency planning and notification requirements which would protect the public in the event of a release of hazardous chemicals. *See*, H.CONF.REP. NO. 962 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 3276. As the *Atlantic States* court pointed out, the filing of the MSDS is necessary to achieving the underlying purpose of EPCRA.

> [The filing of the MSDS] is obviously a critical first step to achieving the intent of EPCRA, for without the filing of this information, state and local officials would have no way of receiving the necessary information regarding hazardous chemicals to make available to the public and to formulate an effective emergency response plan. *Atlantic States*, 772 F.Supp. 745, 751.

Together, the legislative history and the plain language of the statute compel the conclusion that past violations are not exempt from EPCRA's citizen suit provisions.

## B. The EPCRA Penalty Provision

■ Defendant relies on an analysis of the factors set out in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1961) to support its contention that the civil penalty provision of Section 11045(c)(2) is actually a criminal penalty in order to rely on the principle that the re-

2. This case and *Atlantic States* are both distinguishable from *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), where the Supreme Court held that the citizen suit provision of the Clean Water Act did not confer federal jurisdiction over citizen suits for wholly past violations. The Clean Water Act authorizes citizen suits "against any person ... who is *alleged to be in violation of* ..." 42 U.S.C. § 1356(a). The express language of the statutory provision at issue in *Gwaltney* required that the defendant be in violation at the time of filing suit. Thus, the plain language of EPCRA's citizen suit provision is different from that of the Clean Water Act's.

peal of a criminal statute prevents prosecution under the statute. The Supreme Court has repeatedly held that whether a statutorily defined penalty is civil or criminal is a matter of statutory construction. *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). *See, e.g. One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972). This involves a two step analysis. *Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641.

 The first step is to determine whether Congress either expressly or impliedly indicated a preference for one label over the other. *Ward*, at 248, 100 S.Ct. at 2641. In *Ward*, the Supreme Court held that where Congress expressly labeled penalties as "civil" in one section and in the next section provides for criminal penalties, Congress intended to establish a civil penalty. *Id.* at 249, 100 S.Ct. at 2641. EPCRA's enforcement provision consists of 6 subsections. The subsections immediately preceding and following the section at issue in this case both expressly provide for criminal penalties for other types of EPCRA violations.[3] Thus, the statutory structure and language demonstrates Congress' express intention that the penalties provided for by subsection (c) be civil rather than criminal. As the Supreme Court stated in *Ward:* "[the civil penalty label] takes on added significance given its juxtaposition with the criminal penalties set forth in the immediately preceding paragraph, ..." *Id.* at 249, 100 S.Ct. at 2641.

*The second step* in the inquiry *is to determine whether "Congress,* despite its manifest intention to establish a civil, remedial mechanism, nevertheless *provided for sanctions so punitive as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty."* [emphasis added] *Ward*, at 249, 100 S.Ct. at 2641, *citing, Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956). Only the clearest of proof, that the penalty in question is puni-

tive in either purpose or effect is sufficient to support finding that a penalty which Congress expressly intended to be civil is actually criminal in nature.

While the factors outlined in *Kennedy*, 372 U.S. 144, 83 S.Ct. 554, may be helpful in making this determination, they are *not dispositive.* [emphasis added] *Ward*, 448 U.S. at 249, 100 S.Ct. at 2641. The penalty provision at issue states:

[Any person who violates Section 11021] ... shall be liable to the United States for a civil penalty in an amount not to exceed $10,000 for each such violation. Each day [such] violation continues shall ... constitute a separate violation. 42 U.S.C. Section 11045(c)(2) and (3).

The statute establishes $10,000 per day of violation as an upper limit on the fine which may be imposed, but permits imposition of a lower fine. Therefore, the sanction is not so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty. *See, Ward*, at 249, 100 S.Ct. at 2641.

Furthermore, application of the *Kennedy* factors to this case confirms that the penalty provided by Section 11045(c)(2) is civil. Defendant contends that because the statute exacts money from a violator, it imposes a large affirmative disability. Applying the *Kennedy* factors in *Ward*, the Supreme Court did not find that a maximum penalty of $5,000 was punitive.

Defendant cites to the Final Penalty Policy issued by EPA on June 13, 1990 in support of its contention that the penalty supports the traditionally aims of punishment associated with criminal statutes. However, following the provisions which defendant cites, the report states:

Because this *policy is intended to provide guidance in assessing administrative and civil judicial remedies only,* [emphasis added] it does not constitute a statement of EPA policy regarding the appropriate circumstances in which the

---

**3.** Subsection (b) is entitled "Civil, administrative, and criminal penalties for emergency notification." Subsection (c), the subsection at issue in this case, is entitled "Civil and adminis-

trative penalties for reporting requirements." Subsection (d) is entitled "Civil, administrative, and criminal penalties with respect to trade secrets." 42 U.S.C. § 11045.

United States may prosecute violations of CERCLA Section 103 and EPCRA Section 304, nor the criminal sentence that a court should impose upon conviction for violations of either of these two provisions of Federal law. .... The procedures set out in this document ... are not intended and cannot be relied upon to create rights, substantive or procedural, enforceable by any party in litigation with the United States. Final Penalty Policy for Sections 302, 303, 304, 311, and 312 of the Emergency Planning and Community Right-to-Know-Act and Section 103 of CERCLA, issued by the United States EPA on July 13, 1990.

Furthermore, as Leybold points out, the penalty is designed to accomplish a general regulatory goal of compliance with the reporting requirements.

Although there is apparently no criminal statute for the identical violation, EPCRA does provide criminal penalties for other reporting violations. Furthermore, the sole purpose of the penalties under Section 11045 is to ensure that the public receives information about the location of hazardous materials within the community, thus enabling the community to develop emergency response plans. EPCRA has no alternative purpose. These factors provide further support for finding that the penalty at issue is civil. Since Congress expressly intended the penalty provided by 42 U.S.C. Section 11045(c)(2) to be civil, and an application of the *Kennedy* factors to this case provides no basis for finding it to be criminal or quasi-criminal, the Court finds that the penalty is civil.

### IV. *Conclusion*

The plaintiff may bring a citizen enforcement action pursuant to 42 U.S.C. Section 11046 seeking civil penalties for a past failure to comply with 42 U.S.C. Section 11021(a)(1) even though the defendant came into compliance prior to the filing of the complaint. Since plaintiff has established all statutory requirements for a citizen suit under EPCRA, and defendant has raised no other defenses, plaintiff is entitled to summary judgment on his claim that Leybold is liable for violation of the EPCRA reporting requirements. Accordingly, plaintiff's motion for summary judgment is hereby GRANTED, and defendant's counter motion for summary judgment is hereby DENIED. The only issue which remains for trial is the amount of civil penalty to be awarded. Court trial on that issue shall commence on March 13, 1992 at 10:00 a.m., the parties having waived jury trial.

IT IS SO ORDERED.