Sigmund **FRIED**, et al.

v.

**SUNGARD RECOVERY SERVICES, INC.**, et al.

**Civil Action No. 95–CV–0878.**

United States District Court,
E.D. Pennsylvania.

Feb. 20, 1996.

Mark R. Cuker, Steven M. Schain, Williams & Cuker, Philadelphia, PA, for Plaintiffs.

Roger F. Cox, Kenneth N. Klass, Jordana Cooper, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for SunGard, Dibrino, and Mulholland.

John P. McShea, III, Eckert Seamans Cherin & Mellott, Philadelphia, PA, for Intech Corp.

## MEMORANDUM

JOYNER, District Judge.

All Defendants; SunGard Recovery Services Inc., SunGard Data Systems, Inc., James DiBrino, Michael Mulholland (jointly, the SunGard Defendants) and Intech Construction, Inc., move this Court for a Summary Judgment on Count II of Plaintiffs' Second Complaint. This is the only count common to all Defendants and the only count remaining against the SunGard Defendants.

This Court will grant a summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, we view all the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must

establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

## DISCUSSION

First, Plaintiffs do not contest SunGard Data Systems, Inc.'s Motion for "full" Summary Judgment. As a result, the Motion will be GRANTED with respect to that Defendant.

Second, and contested by Plaintiffs, is the Motion with respect to the other Defendants. Count II makes the charge that SunGard Recovery Services, Inc. (SRS), together with its independent contractor, Intech Construction Inc., conducted renovations on the sixth, seventh and mezzanine floors of 401 N. Broad Street, Philadelphia, in complete derogation of the laws governing asbestos removals. These laws are found in the Clean Air Act, 42 U.S.C. §§ 7401–7671q (1995) (CAA) and the National Emission Standard for Hazardous Air Pollutants for asbestos (NESHAP), 40 C.F.R. §§ 61.140–.157 (1995). Defendants contend that first, this Court has no jurisdiction over Plaintiffs' claims, and second, even if there is jurisdiction, there is no evidence to support the claims.

As a basic rule, we will not have jurisdiction over this action unless Plaintiffs can show that Defendants are subject to the CAA and NESHAP and that Defendants failed to comply with the relevant requirements. *United States v. Midwest Suspension & Brake,* 824 F.Supp. 713, 725 (E.D.Mich.1993), *aff'd,* 49 F.3d 1197 (6th Cir.1995).

### A. Whether Defendants Are Subject to the CAA and NESHAP

NESHAP's notice and work procedures requirements apply to a facility that is undergoing a renovation operation if the combined amount of Regulated Asbestos Containing Material (RACM) to be affected is at least 260 linear feet on pipes or at least 160 square feet on other facility components. A renovation operation is defined as a renovation operation or a number of such operations in which at least some RACM will be removed within a certain period of time. 40 C.F.R. § 61.141. Because NESHAP does not apply to removals concerning less than the above amount of asbestos, NESHAP requires an owner or operator of a renovation activity to thoroughly inspect the facility for the presence of asbestos before the renovation operation begins. 40 C.F.R. § 61.145.

■ Plaintiffs present uncontested evidence that at least 2700 square feet of floor tile containing asbestos was removed from the sixth floor during one weekend in 1992. In addition, it is uncontested that in 1990, over 300 linear feet of asbestos-containing pipe insulation was removed from the building. Each of these two incidents alone concerns enough asbestos to trigger NESHAP for at least that renovation operation. Given this, the first prong of the jurisdictional test, that the CAA and NESHAP apply to a party, is met.

### B. Whether Defendants Violated the NESHAP

In 1990, the CAA was amended to permit citizen suits against any person "alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation" of NESHAP.[1] 42 U.S.C. § 7604(a). Until the 1990 Amendments, citizen suits were only permitted when the alleged violations continued till the date the action was filed. This doctrine, barring wholly past violations, was based on the Supreme Court's holding in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation,* 484 U.S. 49, 57, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987), interpreting the Clean Water Act's then-similar citizen suit provision.

■ A plain reading of the CAA as amended, however, indicates that the 1990 Amendments overruled *Gwaltney* with respect to wholly past violations. The CAA, therefore, permits citizen suits for both continuing violations and wholly past violations, so long as the past violation occurred more than once. This interpretation has been ac-

---

**1.** The original language only permitted suits against those "alleged to be in violation."

cepted by several courts and is pressed upon us by Plaintiffs. *Atlantic States Legal Found. v. United Musical Instrs.*, 61 F.3d 473, 477 (6th Cir.1995) (in dicta: Congress passed 1990 Amendments "explicitly to allow citizen suits for purely historical violations"); *Glazer v. American Ecology Env. Servs. Corp.*, 894 F.Supp. 1029, 1037 (E.D.Tex.1995) ("The 1990 amendments to the CAA add a basis for citizen suit jurisdiction"); *Adair v. Troy State Univ.*, 892 F.Supp. 1401, 1409 (M.D.Ala.1995) (1990 Amendment "clearly includes past violations, so long as there is evidence that the violations were repeated"); *Atlantic States Legal Foundation, Inc. v. Whiting Roll–Up Door Mfg. Co.*, 772 F.Supp. 745 (W.D.N.Y.1991) (same, in dicta). *See also* Daniel Riesel, *Citizen Suits and the Award of Attorneys' Fees in Environmental Litigation*, C921 ALI–ABA 1073, 1126 (1994) (1990 Amendments "effectively reversed the holding in *Gwaltney*"); Hon. Henry A. Waxman, *An Overview of the Clean Air Act Amendments of 1990*, 21 Envt.L. 1721, 1748 (1991) ("the 1990 Amendments for the first time explicitly provide that citizens can seek civil fines for both past and current violations of the CAA"); David T. Buente, *Citizen Suits and the Clean Air Act Amendments of 1990: Closing the Enforcement Loop*, 21 Envt.L. 2233, 2238 (1991) ("Congress partially overruled the Supreme Court's *Gwaltney* decision.").

Defendants, however, encourage this Court to read the 1990 Amendments in a different way. They assert that the 1990 Amendments were intended to codify the *Gwaltney* decision, albeit in a sloppy manner. In support, they point to the statement President Bush made when he signed the amendments into law. He indicated that the 1990 Amendments codified *Gwaltney*. 26 Weekly Compilation of Presidential Documents 1824, Nov. 19, 1990. At least one other court has arguably held similarly. *Satterfield v. J.M. Huber Corp.*, 888 F.Supp. 1561 (N.D.Ga.1994) (but, citing to *Whiting Roll–Up* for support).

We find that the plain language of the statute must control, especially here, where the language is not ambiguous. *Gwaltney*, 484 U.S. at 56, 108 S.Ct. at 380–81. For this reason, we find that the 1990 Amendments to the CAA serve to permit citizen suits for wholly past violations, so long as the violation was repeated. Of course, jurisdiction for citizen suits can also be grounded on violations that continue to the date the action is filed, and *Gwaltney*'s guidance would be used then.

Next, Defendants maintain that even if we decide that the 1990 Amendments permit actions for wholly past violations, that the effective date of the amendments prevents their application to this case. The effective date section of the 1990 Amendments reads: "The amendment made by this subsection shall take effect with respect to actions brought after the date 2 years after the enactment of the Clean Air Act Amendments of 1990."

Defendants' argument is that Congress could not have intended to encourage future plaintiffs to wait an additional two years before bringing an action for wholly past violations. Rather, they interpret that language as delaying the application of the amendments to repeated *violations* occurring two years after enactment. It supports this reading with its position that civil penalty provisions are quasi-criminal in nature and ex post facto issues are therefore raised by retroactive application. *First American Bank v. Dole*, 763 F.2d 644, 651 n. 6 (4th Cir.1985) (Federal Aviation Act case).

In turn, Plaintiffs direct us to the plain language of the statute, which clearly indicates that the amendments take effect with respect to *actions*, not violations, brought two years after the effective date. We agree and find that the 1990 Amendments apply to this action, given that it was filed more than two years after the enactment of the 1990 Amendments.

■ Further, we hold that the 1990 Amendments apply to all the claims in this action. Defendants have argued that despite our above ruling, *Gwaltney* would still apply to the alleged violations that occurred before the 1990 Amendments' effective date. Their ex post facto argument is directed in part to support this theory. We do not agree. Again, the plain language states that the amendments apply to *actions*, not to certain claims or issues within actions. Further, the

1990 Amendments do not create any new types of illegalities but only affect, in a sense, the statute of limitations for those illegal acts with respect to citizen suits. For this reason, we hold that the 1990 Amendments apply to the whole of Plaintiffs' claims. *See* Riesel, *Citizen Suits,* C921 ALI–ABA at 1126 ("Because [the 1990 Amendment] applies to actions, not violations, it would appear to reach back to violations that pre-dated the enactment of the 1990 Amendments.")

With the above in mind, it is time to turn to the actual substance of Plaintiffs' charges against Defendants; that they repeatedly violated the CAA. The CAA is violated if NESHAP's requirements applied to a renovation operation and the operator or owner of the operation did not comply with the applicable regulations. The evidence presented indicates that there may have been several sets of renovation operations undertaken at the facility. These include 1989, 1992 and 1993 Retrofits, a 1993–94 Code Construction and a 1984 and 1985 Renovation. It also appears from the evidence that the requisite amount of asbestos was involved in at least some of the renovation operations, but it is unclear which ones and whether any NESHAP requirements were violated in each operation and whether the violations continued to the date this action was filed or were repeated.

The discussions and evidence presented in this Motion for summary judgment do not permit a judicial determination of whether genuine issues of material fact exist. Defendants' motion is premised on the theory that the only relevant time-frame for this Motion is the time after 1993. Plaintiffs' responses did not materially expand that scope. Further, the parties' few discussions of specific asbestos removals are made out of the context of their respective renovation operation. We, therefore, are unable to determine what renovation operations there were, whether NESHAP applied to each operation and whether NESHAP's require-

ments were violated at all, repeatedly or continuously.

Accordingly, we direct further briefing on the subject of the questions raised above.[2] Defendants are granted fourteen days from the date of the attached Order's entry to file a supplemental brief for summary judgment, Plaintiffs are granted fourteen days to respond and Defendants are granted ten days to reply to any new issues or evidence raised in Plaintiffs' response.[3]

An appropriate Order follows.

### ORDER

AND NOW, this 20th day of February, 1996, upon consideration of the Motion of SunGard Defendants for Summary Judgment and the Motion of Defendant Intech Construction, Inc. for Summary Judgment and responses thereto, the Motions are hereby GRANTED in PART and reserved for later ruling in PART. The Motions are hereby GRANTED in that Summary Judgment is hereby GRANTED in favor of Defendant SunGard Data Systems, Inc.

All other aspects of the Motions are hereby reserved pending further briefing as discussed in the attached Memorandum. Defendants are hereby GRANTED fourteen days from the date of this Order's entry to supplement the Motions for Summary Judgment. Plaintiffs are hereby GRANTED fourteen days to respond and Defendants are hereby GRANTED ten days to reply to any new issues or evidence raised in Plaintiffs' response.

---

**2.** Of course, if Defendants choose not to pursue this Motion, they may so indicate to the Court. Whether injunctive relief is available is also reserved for the later ruling.

**3.** A motion for reconsideration would be appropriately made only after this Court has finally ruled on the Motion for Summary Judgment.