**DON'T WASTE ARIZONA, INC., an Arizona non-profit corporation, Plaintiff,**

v.

**McLANE FOODS, INC., a foreign corporation, Defendant.**

**Civ-95-1808-PHX-ROS.**

United States District Court, D. Arizona.

Jan. 8, 1997.

Matthew David Karnas, Michael David Richter, Siegel Bellovin & Karnas, Tucson, AZ, for Don't Waste Arizona, Inc.

Lisa Alane Schuh, Snell & Wilmer LLP, Phoenix, AZ, for McLane Foods Inc.

## AMENDED ORDER

SILVER, District Judge.

Pursuant to Fed.R.Civ.P. 56(d), Plaintiff Don't Waste Arizona has filed a Motion for Partial Summary Judgment on the issue of liability. Plaintiff argues it is entitled to summary judgment establishing that Defendant McLane Foods, Inc. is liable for violations of the Emergency Planning and Community Right–to–Know Act ("EPCRA"), 42 U.S.C. § 11001 *et seq.*

### *FACTUAL BACKGROUND*

Plaintiff Don't Waste Arizona is a non-profit corporation which operates as a membership organization with the goals of environmental protection and community education. Defendant McLane Foods, Inc. operates a food preparation and distribution operation, primarily assembling sandwiches for distribution to local businesses. In October 1993, Defendant McLane Foods purchased a spiral freezer which uses ammonia as a coolant. During the calendar years of

1993 and 1994, Defendant had on site at its facility more than 500 pounds of ammonia. Ammonia is classified as an extremely hazardous substance for purposes of the EPCRA reporting requirements. 40 CFR 355, App.A. Hence, a facility having more than 500 pounds of ammonia on site at any one time during a calendar year is subject to the reporting requirements of 42 U.S.C. § 11022(d)(2). 40 CFR § 370.20(b)(1). The facility is required to submit an emergency and hazardous chemical inventory form to the appropriate local emergency planning committee, the State emergency response commission, and the fire department having jurisdiction over the facility. 42 U.S.C. § 11022(a)(1).

The parties do not dispute that Defendant McLane did have more than 500 pounds of ammonia on site at any one time during the calendar years 1993 and 1994. The EPCRA requires that a facility having a reportable quantity of a hazardous substance in a calendar year shall submit the required reports by March 1 for the preceding calendar year. 42 U.S.C. § 11022(a)(2). The parties do not dispute that Defendant McLane failed to submit (1) a Tier II report by March 1, 1994, for the calendar year 1993; and (2) a Tier II report by March 1, 1995, for the calendar year 1994. On May 12, 1995, Defendant McLane did submit the Tier II reports for both 1993 and 1994, indicating that its facility had on site 4500 pounds of ammonia during the calendar years 1993 and 1994.

On April 28, 1995, Plaintiff gave notice of Defendant's alleged violations of EPCRA and of Plaintiff's intent to file suit to the Administrator of the United States Environmental Protection Agency (EPA), the Regional Administrator of the EPA Region IX, the Arizona Department of Quality (ADEQ) and Defendant, as required by 42 U.S.C. § 11046(d)(1).

Section 11046(d)(1) provides that no citizen suit may be commenced under section 11046(a)(1)(A) until 60 days after the plaintiff has given notice of the alleged violation to the Administrator, the State in which the alleged violation occurs, and the alleged violator. Accordingly, on August 28, 1995, more than 60 days after giving notice of intent to

sue, Plaintiff filed the instant action pursuant to § 11046(a)(1). The Complaint alleges that Defendant violated the reporting requirements of the EPCRA, § 11022(a)(1), for the years 1989 through the present. On February 15, 1996, Plaintiff filed an Amended Complaint, pursuant to stipulation by the parties. In its Motion for Partial Summary Judgment, Plaintiff has stated it will withdraw the allegations of violations during the years 1989, 1990, 1991 and 1992. Plaintiff now requests partial summary judgment on the issue of liability for the years 1993 and 1994 only. Plaintiff is also seeking injunctive relief, civil penalties, and costs, including attorneys' and expert witness' fees, which are designed to be resolved after the decision on the partial summary judgment.

## *LEGAL DISCUSSION*

None of these facts are in dispute. The parties' dispute is solely a legal one addressed to the proper interpretation of the citizen suit provision of EPCRA, 42 U.S.C. § 11046. 42 U.S.C. § 11046(a)(1) provides for citizen suits to be brought against:

(A) an owner or operator of a facility for failure to do any of the following: . . . (iii) complete and submit an inventory form under section 11022(a) of this title containing tier I information as described in section 11022(d)(1) of this title unless such requirement does not apply by reason of the second sentence of section 11022(a)(2) of this title.

Because Defendant cured its noncompliance by filing the required reports on May 12, 1995, after receipt of Plaintiff's notice of intent to sue but before Plaintiff filed suit in federal court, Defendant argues that there is no cause of action against Defendant and that the Court lacks jurisdiction over this citizen suit. Plaintiff contends that a citizen suit may be brought for wholly past violations and requests partial summary judgment on the issue of liability because there exists no genuine issue of material fact regarding liability. Plaintiff requests that the Court rule on (1) whether the Court has jurisdiction over the action; (2) whether Defendant violated the EPCRA's reporting re-

quirements; and (3) whether Plaintiff has standing to maintain this action.

### A. MOTION FOR PARTIAL SUMMARY JUDGMENT

Fed.R.Civ.P. 56(d) permits the Court to issue an order "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just."

A motion for summary judgment may be granted if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that there is no genuine issue of material fact. The sole issue is whether Plaintiff is entitled to judgment as a matter of law.

### B. CITIZEN SUIT PROVISION OF EPCRA

 Plaintiff argues that partial summary judgment is appropriate because Defendant does not dispute that it failed to submit the required inventory forms by March 1, 1995, and March 1, 1994, respectively. Defendant argues that this Court lacks subject matter jurisdiction over the action because the jurisdictional provision authorizing citizen suits of the EPCRA is limited to jurisdiction over claims of continuing violations, so that once Defendant came into compliance with the reporting requirements, the availability of a suit terminated.

#### 1. Case authority

This is an issue of first impression in the Ninth Circuit. The Northern District of California is the only district in the Ninth Circuit to have addressed the issue. *See Williams v. Leybold Technologies,* 784 F.Supp. 765 (N.D.Cal.199). The only circuits to have confronted this issue are the Sixth and Seventh Circuits, and they issued contrary decisions. *See Citizens for a Better Environment v. Steel Company,* 90 F.3d 1237 (7th Cir.1996); *Atlantic States Legal Foundation v. United Musical Instruments,*

61 F.3d 473 (6th Cir.1995), *reh'g denied,* (6th Cir.1995).

In support of its position, Defendant relies on *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), and *United Musical, supra.* *Gwaltney* interpreted the citizen suit provision of the Clean Water Act ("CWA"), which provides that in the absence of federal or state enforcement, private citizens may commence civil actions against any person "alleged to be in violation of" the conditions of either a federal or state National Pollutant Discharge Elimination System ("NPDES"). 33 U.S.C. § 1365(a)(1). At issue for the Supreme Court was the proper interpretation of the phrase "to be in violation of," and the Court decided that this language was clearly meant by Congress to be prospective only in nature. The Court found that the pervasive use of the present tense throughout the enforcement provision was a "striking indicia of the prospective orientation of the citizen suit." *Gwaltney,* 484 U.S. at 59, 108 S.Ct. at 382. The CWA has a 60 day notice period identical to the 60 day period required by the EPCRA. 33 U.S.C. § 1365(b)(1)(A); 42 U.S.C. § 11046(d)(1). The Court found that any other interpretation of the "to be in violation of" language would render the 60 day waiting period superfluous because that period was intended to give the alleged violator an opportunity to come into compliance and thus render a citizen suit unnecessary. *Id.* Further, the Court acknowledged that both the Senate and House reports explicitly connected § 505 (the CWA citizen suit provision) to the citizen suit provision authorized by the Clean Air Act, 42 U.S.C. § 7604(a)(1), which "are wholly injunctive in nature." *Id.* at 62, 108 S.Ct. at 384.[1]

In *Atlantic States Legal Foundation v. United Musical,* the Sixth Circuit was confronted with the precise question at issue in this action: whether the citizen suit provision of the EPCRA authorizes relief for wholly past violations. In *United Musical,* the alleged violator had failed to submit toxic chemical release forms (Form R's) as re-

---

1. 42 U.S.C. § 7604(a)(1) was amended in 1990.

quired by 42 U.S.C. § 11023(a). The citizen suit provision authorizing suit for failure to submit a Form R is the same provision as that authorizing suit for failure to submit a Tier II form. 42 U.S.C. § 11046(a)(1)(A)(iii)–(iv). Despite the fact that *Gwaltney* addressed the CWA and not the EPCRA, the Sixth Circuit found the *Gwaltney* Court's reasoning applicable to the EPCRA context. *United Musical,* 61 F.3d at 475. The plaintiff in *United Musical* argued, as does the plaintiff here, that the language of the EPCRA provision, which authorizes a citizen suit against "any owner or operator of a facility for *failure to do* any of the following," 42 U.S.C. § 11046(a)(1)(A) (emphasis added), is distinguishable from the language of the CWA provision, which authorizes suit against "any person ... who is *alleged to be in violation of*" a standard, 33 U.S.C. § 1365(a)(1) (emphasis added). The *United Musical* court was not persuaded by this distinction and found that the citizen suit provision of the EPCRA does not apply to purely historical violations. *United Musical,* 61 F.3d at 476–477. The court reasoned that because Congress provided different grants of authority to the EPA and citizen plaintiffs, the language "indicate[d] a congressional intent to limit citizen suits to ongoing violations and to give the EPA sole authority to seek penalties for historical violations." *United Musical,* 61 F.3d at 475.

Defendant's reliance on *Gwaltney* and *United Musical* is grounded in the fact that, because it came into compliance with the EPCRA reporting requirements on May 12, 1995, the possibility of a citizen suit was extinguished. Thus, this Court lacks subject matter jurisdiction over the citizen suit.

Plaintiff, on the other hand, relies on *Citizens for a Better Environment v. Steel Company,* 90 F.3d 1237 (7th Cir.1996). *Citizens* concerned a plaintiff who sued a defendant for failure to submit an inventory form and a toxic release form. There, as here, the alleged violator filed the required forms upon receipt of notice of the plaintiff's intent to sue. The lower court found for the defendant, relying on *United Musical.* The Seventh Circuit reversed, criticizing the *United Musical* court's approach. *Citizens,* 90 F.3d

at 1241–42. The Seventh Circuit stated that it would apply *Gwaltney*'s methodology rather than import its conclusion wholly by analogy. *Id.* at 1242–43. Using *Gwaltney*'s starting point of giving the language of the statute its "most plain and natural meaning," *Gwaltney,* 484 U.S. at 56, 108 S.Ct. at 380–81, the *Citizens* court found that the "failure to do" language of the EPCRA differs from the "to be in violation of" language of the CWA in an important respect. "The plain language of the EPCRA citizen enforcement provision does not point clearly to the *present tense* as its counterpart does in the Clean Water Act. In fact, it does the opposite. The language of EPCRA contains no temporal limitation; "failure to do" something can indicate a failure past or present." *Citizens,* 90 F.3d at 1243 (emphasis added).

In addition, the *Citizens* court made clear that the citizen suit provision authorizes citizens to sue for "failure to complete and submit" forms *"under"* §§ 11022 and 11023. 42 U.S.C. § 11046(a) (emphasis added). "The most natural reading of 'under' a section is 'in accordance with the requirements of' that section," and this is just a simple way of incorporating the requirements of those sections. *Citizens,* 90 F.3d at 1243. This analysis supports Plaintiff's position that the reports must be *timely* filed in order to be filed "under" § 11022.

Other district courts addressing this issue have reached the same conclusion as the *Citizens* court. *See Delaware Valley Toxics Coalition v. Kurz–Hastings, Inc.,* 813 F.Supp. 1132, 1141 (E.D.Pa.1993); *Williams v. Leybold Technologies,* 784 F.Supp. 765 (N.D.Cal.1992); *Atlantic States Legal Foundation v. Whiting Roll–Up Door Manufacturing Corp.,* 772 F.Supp. 745 (W.D.N.Y. 1991); *Atlantic States Legal Foundation, Inc. v. Buffalo Envelope Company,* 1991 WL 183772 (W.D.N.Y.1991).

The only other district court in the Ninth Circuit to have spoken on this issue is the Northern District of California, holding in *Williams v. Leybold Technologies,* 784 F.Supp. 765 (N.D.Cal.1992), that the EPCRA does authorize suits for wholly past violations. The district court referred to the plain language interpretation used by the

district court in *Atlantic States Legal Foundation v. Whiting Roll–Up Door Manufacturing Corp.,* 772 F.Supp. 745 (W.D.N.Y. 1991), in concluding that "together, the legislative history and the plain language of the statute compel the conclusion that past violations are not exempt from EPCRA's citizen suit provision." *Leybold Technologies,* 784 F.Supp. at 768.

Analysis of the plain language of the statute and the policies driving the enactment of the EPCRA compels the conclusion that the *Citizens* court has embraced the better reasoned approach to statutory construction. In addition, the *Gwaltney* Court's conclusion, heavily relied upon by the *United Musical* court, is at least questionable in light of Congress' 1990 amendments to the Clean Air Act ("CAA"). *See* 42 U.S.C. § 7604. In 1990, Congress amended the citizen suit provision of the Clean Air Act to read:

(a) ... any person may commence a civil action in his own behalf—(1) against any person ... who is *alleged to have violated* (if there is evidence that the alleged violation has been repeated) or *to be in violation of....*

42 U.S.C. § 7604(a)(1) (emphasis added). This amendment makes it plain that a citizen suit may now be maintained for a wholly past violation of the CWA, as long as the violation was not an isolated incident. *See e.g., Citizens,* 90 F.3d at 1244 ("In 1990 Congress amended the Clean Air Act to permit citizen enforcement actions for past violations."); *Fried v. Sungard Recovery Services, Inc.,* 916 F.Supp. 465, 467 (E.D.Pa.1996). In *Gwaltney,* the Supreme Court expressly stated that its conclusion was based in part on Congress' statements indicating that the citizen suit provision of the CWA was modeled after the citizen suit provision of the Clean Air Act. *Gwaltney,* 484 U.S. at 62, 108 S.Ct. at 383–84. "This understanding of the 'alleged to be in violation of' language as a statutory term of art rather than a mere stylistic infelicity is reinforced by the consistent adherence in the Senate and House Reports to the precise statutory formulation." *Id.*

When Congress amended the Clean Air Act, it intended to address the *Gwaltney* decision. The signing statement by President Bush indicates that Congress had considered the *Gwaltney* opinion in amending the statute. "I note that in providing for citizen suits for civil penalties, the Congress has codified the Supreme Court's interpretation of such provisions in the *Gwaltney* case. As the Constitution requires, litigants must show, at a minimum, intermittent, rather than purely past violations of the statute in order to bring suit." 26 Weekly Compilation of Presidential Documents 1824, Nov. 19, 1990. President Bush's use of the word "codified" is somewhat confusing, but the statement supports the position that *Gwaltney* was altered to the extent that it had held that a citizen suit may never be maintained for a wholly past violation. Further, President Bush's statement supports the argument that Congress had the result in *Gwaltney* in mind when it chose to amend the language of the Clean Air Act's citizen suit provision. *See Fried,* 916 F.Supp. at 468 (rejecting argument that the statement shows that *Gwaltney* was not overruled by the amendments because the plain language of the amended statute clearly overrules portions of *Gwaltney* ).

Defendant argues that the amendment of the CAA language actually supports its position because if Congress had intended to allow suits for past violations under the EPCRA, it could have amended the language of the EPCRA when it amended the language of the CAA. This argument assumes that the language of the EPCRA is identical to the language of the pre–1990 Clean Air Act. But Congress did not need to amend the language of the EPCRA's citizen suit provision because that language already authorized citizen suits for wholly past violations.

## 2. Statutory construction

The Court begins its task of reviewing EPCRA section 11046 by observing two critical canons of statutory interpretation. First, in interpreting a statutory provision, a court must look to the statute's plain language. *Caminetti v. United States,* 242 U.S. 470, 485 (1916). Where the language of a statute is plain and unambiguous on its face, "the sole function of the courts is to enforce it accord-

ing to its terms." *Id.* *See also, United States v. Behnezhad,* 907 F.2d 896, 898 (9th Cir.1990).

Second, when a court is construing a remedial statute, it must construe the statutory language broadly in order to give effect to the statute's remedial purposes. *See, e.g., Wilshire Westwood Assocs. v. Atlantic Richfield Co.,* 881 F.2d 801, 803 (9th Cir.1989) (courts are obligated to construe CERCLA provisions liberally because it is a remedial statute designed to protect and preserve public health and the environment).

### a. Jurisdiction under 42 U.S.C. § 11046(c)

The jurisdictional grant of the EPCRA provides: "[t]he district court shall have jurisdiction in actions brought under subsection (a) of this section against an owner or operator of a facility to enforce the requirement concerned and to impose any civil penalty provided for violation of that requirement." 42 U.S.C. § 11046(c). Defendant argues that this jurisdictional grant limits the district court to hearing cases where the court may enforce the requirement concerned *and* impose the appropriate civil penalty. Thus, in a case where the defendant has come into compliance, the court no longer has the power to enforce the requirement because the district court must exercise its two powers simultaneously. Therefore, Defendant argues, neither does the court have the power to impose civil penalties.

Defendant contends that support for its argument may be found by looking at the jurisdiction provision, 42 U.S.C. § 11046(c), as it stands in contrast to the limitations provision, 42 U.S.C. § 11046(e). Section 11046(e) provides:

> no action may be commenced under subsection (a) of this section if the Administrator has commenced and is diligently pursuing an administrative order or civil action to enforce the requirement concerned *or* to impose a civil penalty under the Act with respect to the violation of the requirement. (emphasis added).

42 U.S.C. § 11046(e). Defendant argues that this disjunctive "or" makes it clear that the EPA may seek to enforce a requirement *or*

impose a civil penalty while a citizen bringing an action in district court may only seek to enforce a requirement *and* impose a civil penalty. Defendant's argument is creative but unpersuasive.

The jurisdictional provision grants the district court the power to enforce a requirement and to impose civil penalties. The language of this provision is plain and unambiguous. It defines the full range of authority available to the district court. It does not limit the district court to exercising its power only when it will exercise its full range of power. If Congress intended the statute to force the district court to exercise its power to enforce requirements and to impose sanctions simultaneously or not at all, it would have included the term "simultaneously" or "collectively" or "at the same time" in the provision granting the district court jurisdiction over citizen suits.

Further, to give effect to the remedial purposes of the EPCRA, the jurisdictional grant must be read broadly to mean that a district court may exercise its power to enforce a requirement of the EPCRA, *or* to impose, civil sanctions for failure to comply with the requirements of the EPCRA, *or* both. *Wilshire,* 881 F.2d at 803.

The limitations provision, § 11046(e), uses the disjunctive simply to clarify that a citizen is barred from filing suit any time the EPA Administrator chooses to take action, whether that action is to enforce a requirement or to impose a civil penalty. This provision does not, as Defendant suggests, authorize the EPA Administrator to take action. It merely places a restriction on the ability of the citizen to take action against an alleged violator.

Read together, this analysis of the two provisions is consistent. Section § 11046(c) defines the complete contours of the district court's jurisdiction to hear citizen suits against alleged EPCRA violators, while section 11046(e) limits the ability of a citizen to bring an action to cases where the EPA Administrator has chosen not to proceed against the alleged violator.

Accordingly, this Court has jurisdiction to hear this citizen suit brought pursuant to 42

U.S.C. § 11046(a) for a wholly past violation of the EPCRA.

### b. EPCRA's citizen suit provision

The language of the EPCRA citizen suit provision is significantly different from the language of the CWA provision interpreted in *Gwaltney*. "Failure to do" something may refer to a failure past, present or future. *See Citizens*, 90 F.3d at 1243 ("failure to do" may refer to a failure past or present). The language does not contemplate a temporal limitation, unlike the "alleged to be in violation of" language of the CWA which, on its face, is present tense.

The language of the venue provision lends support to the argument that a suit may be brought for a wholly past violation. That section provides that any action under § 11046(a) shall be brought "in the district court for the district in which the alleged violation *occurred.*" 42 U.S.C. § 11046(b) (emphasis added). This language plainly contemplates that a suit may be brought for a violation that occurred in the past. Defendant argues that this language is less compelling than the language in the notice provision, which provides that "no action may be commenced prior to 60 days after the plaintiff has given notice of the alleged violation to the Administrator, the State in which the alleged violation *occurs,* and the alleged violator." 42 U.S.C. § 11046(d)(1) (emphasis added). The *Citizens* court found the combination of the "occurred" and "occurs" language to be distinguishable from the "is occurring" language found in the CWA. *Citizens*, 90 F.3d at 1244. Further, the *Citizens* court found that the "absence of language limiting citizen suits to ongoing violations, and Congress' choice of language specifically referring to past violations, are strong indicators that a cause of action exists under EPCRA for violations that are not ongoing at the time a citizen complaint is filed." *Id.* Further, the "occurs" language in the notice provision is consistent with the conclusion that the statute allows citizens to sue for wholly past violations. In most cases, the alleged violator has not cured her noncompliance at the time a plaintiff issues a notice of intent to sue letter.

The venue provision, by contrast, uses the past tense because it contemplates that the alleged violator may have come into compliance between the time the plaintiff files a notice of intent to sue and the time the plaintiff actually files suit.

In addition to the language indicating an absence of temporal limitations, § 11022 of the EPCRA authorizes suit for failure to "complete and submit" forms "under" §§ 11022 and 11023. Plaintiff argues that "under" should be read to mean "in accordance with." Following this logic would imply a timeliness element into the requirement that inventory forms be submitted by March 1 for the preceding calendar year. Defendant, however, contends that if Congress had intended to include a timeliness requirement, it could have used the language "in accordance with" §§ 11022 and 11023 in the citizen suit enforcement provision. Defendant finds support for this argument in the fact that Congress did use the "in accordance with" language in § 11046(a)(1)(C). That section, however, provides for a citizen suit against "[t]he Administrator, a State Governor, or a State emergency response commission, for failure to provide a mechanism for public availability of information *in accordance with* section 11044(a) of this title." 42 U.S.C. § 11046(a)(1)(C) (emphasis added). Defendant's argument is unpersuasive. The most natural reading of the term "under" § 11022 is "in accordance with" § 11022, implying that the EPCRA does contemplate a timeliness requirement for filing inventory forms. *See Citizens*, 90 F.3d at 1243.

The goals of the EPCRA are best achieved if a timeliness requirement is imposed. The emergency planning agencies incorporate the inventory forms submitted by facilities in order to create an emergency response plan in case of a leak or spill of hazardous substances. If the required information is not timely submitted, the planning agencies cannot include it in their planning reports. In fact, just that consequence resulted in this case. Plaintiff provided the affidavit of John Stewart, Executive Director of the Maricopa County Local Emergency Planning Committee (LEPC). The affidavit states that because Defendant McLane Foods, Inc., did not

submit its Tier II reports by March 1, 1995 and March 1, 1994, respectively, it was not included in the Maricopa County Hazardous Materials Response Plan for 1993 and 1994. (Plaintiff's Exh. 4).

Hence, the most natural reading of the EPCRA citizen suit provision is to require that reports be submitted in a timely manner. Failure to submit reports in a timely manner, then, would be a basis for a suit alleging failure to comply with the EPCRA's reporting requirements.

### 3. Policy arguments

The purpose of the EPCRA reporting requirements is to provide citizens with information about environmental hazards in their communities and to allow emergency response agencies to plan for potential environmental emergencies. Defendant argues that these goals would best be accomplished by preventing citizens from filing suit against alleged violators who have come into compliance by the time the citizen plaintiff files suit.

As Plaintiff responded at oral argument, however, the purposes of the EPCRA would best be served by allowing citizen suits in exactly this situation. If citizen suits are barred for wholly past violations, then facilities have an incentive not to comply with reporting requirements until they have been caught. If a facility is using reportable substances on a small scale, as does Defendant here, it is unlikely that the EPA would use its limited resources to pursue an action for civil penalties. If a facility's noncompliance is not caught by a concerned citizen, then the facility is saved the expense of compliance. If it is caught, it can spend the money to submit the reports and be in no worse financial position than had it submitted the reports when required. If the citizen suit is barred by the alleged violator's coming into compliance, then a facility has every incentive to wait and see if it is caught before spending the money to generate and submit the required reports. *Citizens,* 90 F.3d at 1244.

Defendant agrees that the EPA has the authority to bring a suit for civil penalties for wholly past violations. Defendant argues that allowing citizen suits for wholly past violations would supplant, rather than supplement, the EPA's role. However, the EPA's resources are severely limited, and the purpose of allowing the citizen suit is to permit the citizen to take enforcement action where the EPA Administrator has determined that its resources would best be applied elsewhere. *Citizens,* 90 F.3d at 1244. Section 11046(e) specifically provides that no action may be commenced by a citizen plaintiff if the "Administrator has commenced and is diligently pursuing an administrative order or civil action to enforce the requirement concerned or to impose a civil penalty under this Act." Hence, the statute grants the EPA the discretion to determine whether or not to pursue action against the alleged violator, and no duplicative enforcement action can occur. *See Citizens,* 90 F.3d at 1244. This section works with the notice provision, § 11046(d), to prevent a citizen from filing suit until after the EPA has had an opportunity to decide whether to pursue the alleged violator. Only if the EPA chooses not to pursue the action does the citizen have the grant of authority to file suit. Hence, only if the EPCRA authorizes citizen suits for wholly past violations can the citizen suit provision effectively supplement the EPA's role in enforcing compliance.

### C. STANDING

Under the EPCRA, "any person may commence a civil action on his own behalf...." 42 U.S.C. § 11046(a)(1). The statute defines person as:

> any individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a state, or interstate body.

42 U.S.C. § 11049(7).

### 1. Article III requirement

Plaintiff has raised the issue of standing to bring this suit in its Motion for Partial Summary Judgment and has provided a thorough treatment of the issue. Defendant has not responded but has indicated in its brief a preference to reserve its objection to a later day.

Standing is a critically important jurisdictional limitation. It is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Like subject matter jurisdiction, standing is not subject to waiver and must be considered by the Court even if the parties fail to raise it. *United States v. Hays*, —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995). There does not appear to be a lack of standing by Plaintiff Don't Waste Arizona. However, because the Court is confronted with a Motion for Partial Summary Judgment by Plaintiff, and because Plaintiff bears the burden of establishing federal jurisdiction at trial, *see Defenders of Wildlife*, 504 U.S. at 560–61, 112 S.Ct. at 2136–37, it is appropriate to resolve this issue now based on the evidence submitted in conjunction with the motion. *See Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. at 2136–37 (elements invoking jurisdiction must be supported with the manner and degree of evidence required at the summary judgment stage of litigation).

### 2. Representational Standing

■ An organization may assert standing in its own right, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S.Ct. 1114, 1124–25, 71 L.Ed.2d 214 (1982), or in a representative capacity for injuries to its members. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1396 (9th Cir.1992). Representational standing is appropriate where (1) the organization's members have standing to sue in their own right; (2) the interests sought to be protected are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires that the members participate individually in the suit. *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441; *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1351 fn. 10 (9th Cir.1994).

### a. individual standing

Plaintiff relies on one member, Mr. Scott Meyer, to demonstrate that the first element of the test for representational standing is satisfied. For an individual to meet Article III's requirements for standing, he must show: (1) an injury in fact; (2) a causal connection between the injury and the defendant's conduct or omissions; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. at 560–61, 112 S.Ct. at 2136–37; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982).

Mr. Meyer's affidavit states that he is a member of Don't Waste Arizona actively involved in investigating the existence of hazardous chemicals in Maricopa County and that he frequents the area where Defendant's facility is located. (Meyer Affidavit, ¶ 2, 4). His affidavit further states that he has been involved in a project to inventory chemicals in Maricopa County and plot the location of facilities using hazardous chemicals in his neighborhood. (Meyer Affidavit, ¶ 5). Because Defendant failed to comply with the EPCRA's reporting requirements, Mr. Meyer has been denied access to the information necessary to complete his inventory project and to make decisions about where to live and work. (Meyer Affidavit, ¶ 2, 5).

Thus, because Mr. Meyer has been denied information necessary to complete his investigative and reporting projects, he has suffered an injury in fact. The injury is traceable to Defendant's conduct because the injury was allegedly caused directly by Defendant's failure to submit reports that were required by the EPCRA. Finally, the injury is redressable by a favorable decision on the merits because the Court may issue civil fines or enjoin Defendant from committing future violations, both of which would deter Defendant from causing similar injuries in the future. *See e.g., Delaware Valley Toxics Coalition v. Kurz–Hastings, Inc.*, 813 F.Supp. 1132, 1139 (E.D.Pa.1993).

### b. interests sought to be protected

Plaintiff Don't Waste Arizona is a nonprofit membership organization with the goals of environmental protection and community education. (Complaint, ¶ 6). The second element of the test for representational standing is satisfied because DWA's interests in a safe environment and an informed public are germane to the purposes of the organization and this suit.

### c. claims presented and relief sought

The third element of the test for representational standing is satisfied because neither the claim asserted nor the relief requested requires that the group's members participate individually in the suit. *See Hunt,* 432 U.S. at 343–44, 97 S.Ct. at 2441–42. The claim presented focuses on Defendant's failure to submit reports required by the EPCRA. The injury suffered is common to all members of the group and does not require individualized proof of injury. *Cf. Warth v. Seldin,* 422 U.S. 490, 515–16, 95 S.Ct. 2197, 2213–14, 45 L.Ed.2d 343 (1975) (associational standing inappropriate where damages would be paid to individual members of the group for injuries peculiar to individual members). In addition, neither the request for civil penalties nor the request for injunctive relief requires individualized proof. Any penalties awarded would be paid into the United States Treasury, 42 U.S.C. § 11045, and any recovery by Plaintiff of costs, pursuant to 42 U.S.C. § 11046(f), would be paid into the organization's treasury rather than into the hands of individual members.

### CONCLUSION

The plain language of the statute, the policies underlying the EPCRA citizen enforcement provision, and the more persuasive case law concerning the issue before the Court compel the conclusion that the EPCRA does authorize citizen suits for wholly past violations of the FPCRA where, as here, the alleged violator has come into compliance after receipt of the citizen plaintiff's intent to sue but before suit has been filed in federal court.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. No. 23–1) is granted.